UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LAYNE AUCOIN                                              CIVIL ACTION

VERSUS

ANDREW CUPIL, ET AL.                              NO.: 16-00373-BAJ-RLB

## RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 33)** filed by Defendants Lt. Andrew Cupil and Msgt. Reginald Robinson. Plaintiff Layne Aucoin filed an opposition. (Doc. 36). For the following reasons, the **Motion for Summary Judgment (Doc. 33)** is **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

The facts taken in the light most favorable to Plaintiff are as follows. Plaintiff is an inmate at the Dixon Correctional Institute, and on August 24, 2015 he was on suicide watch. (Docs. 39 and Doc. 13 at ¶ 3, 7). Plaintiff's prison cell had a video camera with a live feed that prison guards monitored in a control room. (Doc. 33-4 at p. 2). At about 11:00 AM, Plaintiff placed a paper cup over the camera to see if anyone was watching him. (Docs. 39 and Doc. 13 at ¶ 7). At about 11:30 A.M. an officer in the control room notified Msgt. Robinson that the camera in Plaintiff's cell was covered. (Doc. 33-5 at p. 2). Msgt. Robinson and Lt. Cupil then "snuck up" on Plaintiff and used mace on him. (Docs. 39 and 13 at ¶ 8).

Lt. Cupil then ordered Plaintiff to come to the bars in his cell. *Id.* at ¶ 10. Plaintiff complied with Lt. Cupil's order and Lt. Cupil handcuffed Plaintiff's hands behind his back and restrained his feet. *Id.* Lt. Cupil then removed Plaintiff from his cell and brought him to a lobby area where Msgt. Robinson allegedly punched him and threw him to the ground. *Id.* at ¶ 10–11. Sgt. Franklin was also in the area and failed to intervene. *Id.* at ¶ 10. Plaintiff asserts that Lt. Cupil then kicked him. *Id.* at ¶ 11.

Afterwards, Plaintiff showed a Warden his arms and face and boot prints on his chest. *Id.* at ¶ 12. There was an "indentation" on his arm from where Defendants kicked his handcuffs. *Id.* at ¶ 12. Plaintiff was allegedly refused medical care for more than twenty-five days while his hand was numb. *Id.* Two days later, he was moved to a cell that also had a camera and he made sure his swollen face, head, ears, and the "crook" in his arm were presented to the camera.[1] *Id.* at ¶ 13.

Plaintiff claims that Defendants are liable in their personal capacities under § 1983 for violating his Eighth Amendment right to be free from excessive force, for failing to protect him from excessive force under the Eighth Amendment, and for retaliating against him for filing an administrative complaint in violation of the Fourteenth Amendment. *Id.* at ¶ 27. Plaintiff also claims that Defendants are liable for negligence under Louisiana law. *Id.* at 35–36.

---

[1] Plaintiff contends that the "entire incident should have been on video; yet, none was produced." (Doc. 36 at p. 3). However, Plaintiff did not file a motion to compel the purported video footage or file a motion for sanctions asking the Court to draw an adverse inference from the lack of video footage. The deadline to file discovery motions lapsed over nine months ago on June 15, 2017. (Doc. 29 at p. 1).

Plaintiff filed suit on June 8, 2016, (Doc. 1), and then filed an Amended Complaint on August 2, 2016. (Doc. 13). The Court then denied Defendants Motion to Dismiss. (Doc. 30). Defendants then filed a Motion for Summary Judgment. (Doc. 33).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted). When determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994)). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III. DISCUSSION

### A. Excessive Force

Plaintiff claims that Defendants used excessive force in violation of the Eighth Amendment. (Doc. 13 at ¶ 27). "[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by

3

the Eighth Amendment.'" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In the context of an allegation of the use of excessive force by a prison official, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.

"In determining whether the use of force [by a prison guard] was wanton and unnecessary," courts consider "the extent of [the] injury suffered," "the need for [the] application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321) (internal quotation marks omitted). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, and the Eighth Amendment's prohibition against cruel and unusual punishment excludes *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Id.* at 10.

Defendants contend, based on affidavits, that they did not use excessive force. (Doc. 33-4 and 33-5). In particular, Defendants contend that after Msgt. Robinson learned that Plaintiff had blocked the camera in his cell, he ordered Plaintiff to unblock the camera, but Plaintiff refused and then spit at him. (Doc. 33-4 at p. 2–3). Msgt. Robinson then notified Lt. Cupil about what happened. *Id.* When Lt. Cupil arrived to Plaintiff's cell, he also ordered Plaintiff to uncover the camera, but Plaintiff refused. *Id.* Lt. Cupil then repeatedly ordered Plaintiff to come to the bars in his cell

4

to be restrained, but Plaintiff again refused. *Id.* Defendants needed to remove Plaintiff from his cell to uncover the camera. (Doc. 33-5 at p. 2). Lt. Cupil received permission from medical personnel to spray Plaintiff with a chemical agent. *Id.* at p. 3. Lt. Cupil then showed Plaintiff a can of chemical agent, and ordered him again to come to the bars in his cell. *Id.*

According to Defendants, when Plaintiff again refused, Lt. Cupil sprayed Plaintiff with a one second burst of a chemical agent. *Id.* at p. 4. Plaintiff finally came to the bars in his cell and was restrained. *Id.* Defendants then allowed Plaintiff to shower and prison personnel cleaned his cell and removed the paper covering the camera. (Doc. 33-5 at p. 3). Medical personnel also came to examine Plaintiff. *Id.* at p. 4. Defendants contend that Plaintiff did not complain of any injuries or pain, and that they did not beat, kick, or punch Plaintiff. (Doc. 33-4 and 33-5 at p. 3).

At this stage, however, the Court must take the evidence in the light most favorable to Plaintiff. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). And indeed, Plaintiff produced evidence to dispute Defendants version of events. Plaintiff submitted a declaration attesting that his Amended Complaint is true under the penalty of perjury. (Doc. 39). A verified complaint can be used to defeat summary judgment because "factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit." *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003).

In his verified complaint, Plaintiff, among other things, states that he complied with Lt. Cupil's orders, and Lt. Cupil handcuffed his hands behind his back and his

5

feet were restrained. (Docs. 13 at ¶ 10). After that, Plaintiff claims that Msgt. Robinson punched him and threw him to the ground, *Id.* at ¶ 10–11, and Lt. Cupil kicked Plaintiff while he was on the ground. *Id.* at ¶ 11. As a result, among other things, Plaintiff claims that he had a swollen face, head, and ears, and the "crook" in his arm and he was refused medical pain relief for more than twenty-five days while his hand was numb. (Doc. 39 and 13 at ¶ 12–13.

Based on Plaintiff's version of events, which the Court must credit at this stage, Plaintiff has adequately demonstrated that Defendants may have used excessive force by punching and kicking Plaintiff even after he complied with their orders and was handcuffed. Taken as true, Defendants may not have used this force in a good-faith effort to maintain or restore discipline. Rather, the facts in the light most favorable to Plaintiff reflect that they may have punched and kicked him maliciously despite being restrained and complying with Defendants orders. Defendants are also not entitled to qualified immunity because at the time of the incident, it was clearly established that inmates have a constitutional right to be free from the use of excessive force, and it is objectively unreasonable to assault a compliant and restrained inmate. *See Hudson*, 503 U.S. at 5–10.

### B. Failure to Protect

Plaintiff also claims that Defendants failed to intervene and stop him from being assaulted by prison guards. (Doc. 13 at ¶ 27, 33). An "officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley,* 45

F.3d 914, 919 (5th Cir. 1995). The same reasoning applies when a prison guard fails to take reasonable measures to protect an inmate from another guard's use of excessive force. *Davis v. Cannon,* 91 Fed. App'x 327, 329 (5th Cir. 2004).

Defendants argue that they are not liable for failing to protect Plaintiff because there is no evidence that Defendants used excessive force against him. (Doc. 33-2 at p. 23). But, as the Court has already explained, there is a material dispute of fact about whether Defendants used excessive force. The fatal problem, however, to Plaintiff's failure to protect claim is that in his verified complaint, Plaintiff only contends that "Sgt. Franklin was in the area and failed to intervene." (Doc. 13 at ¶ 10). Sgt. Franklin, though, is not a Defendant in this case. (Doc. 13). Plaintiff also failed to address his failure to protect claim in opposition to Defendants Motion for Summary Judgment. (Doc. 36). *See Savers Fed. Sav. & Loan Ass'n v. Reetz,* 888 F.2d 1497, 1501 ("Even a pleaded theory [is] waived when it [is] not raised in opposition to a motion for summary judgment."). Plaintiff's failure to protect claim is therefore dismissed.

### C. Negligence

Plaintiff also claims Defendants are liable for negligence under Louisiana law. (Doc. 13 at ¶ 35–36). Louisiana courts analyze excessive force claims "under the aegis of the general negligence law of Louisiana." *Hall v. City of Shreveport,* 36 So. 3d 419, 422 (La. Ct, App. 2010). To establish negligence under Louisiana law, a plaintiff must show: (1) the Defendant's conduct was the cause in fact of the harm, (2) the Defendant owed a duty of care, (3) the duty was breached, and (4) the risk was in the scope of

harm afforded by the duty. *Batiste v. Theriot*, 458 F. App'x 351, 360 (5th Cir. 2012) (citing *Syrie v. Schilhab*, 693 So.2d 1173, 1177 (La. 1997)). Police officers owe a duty of reasonableness under the totality of the circumstances. *Stroik v. Ponseti*, 699 So. 2d 1072, 1078 (La. 1997). Therefore, for the same reasons the Court concluded that there is a material dispute of fact on Plaintiff's Eight Amendment excessive use of force claim, the Court concludes that there is a material dispute of fact on Plaintiff's negligence claim against Defendants. The evidence in the light most favorable to Plaintiff reflects that Defendants acted unreasonably by punching and kicking him after he complied with their orders.

### D. Retaliation under the Fourteenth Amendment

Plaintiff claims that Defendants violated his Fourteenth Amendment Due Process rights by retaliating against him for filing an unspecified administrative complaint. (Doc. 13 at ¶ 27). Defendants did not move for summary judgment on this claim, nor do they even mention it in their Motion for Summary Judgment. (Doc. 33). A prisoner's retaliation claim, however, is a First Amendment claim. See *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (prison officials may not retaliate against a prisoner for exercising his First Amendment right by complaining through proper channels about a guard's misconduct.). In any event, to establish retaliation "a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Id.* (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)).

Even if the Court construed Plaintiff's retaliation claim as a First Amendment claim, it does not appear there is any evidence of retaliation because Plaintiff alleges absolutely no facts to support a retaliation claim. (Doc. 13). In his only mention of retaliation, Plaintiff alleges that "retaliating against an inmate for filing a [prison grievance] violates the 14th Amendment substantive and procedural rights [sic]." (Doc. 13 at ¶ 27). But this entirely conclusory statement includes no factual allegations to support a retaliation claim. The Court therefore puts Plaintiff on notice that it intends to dismiss his retaliation claim on summary judgment.

The United States Court of Appeals for the Fifth Circuit has held that "a district court may grant summary judgment sua sponte, 'so long as the losing party has ten days notice to come forward with all of its evidence' in opposition to summary judgment." *Love v. Nat'l Med. Enterprises*, 230 F.3d 765, 770–71 (5th Cir. 2000) (quoting *Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir. 1995). Here, unless Plaintiff provides evidence to support his retaliation claim within fourteen days, the Court will dismiss his retaliation claim.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 33)** is **GRANTED IN PART and DENIED IN PART**. The **Motion for Summary Judgment** is **GRANTED** as to Plaintiff's Eighth Amendment failure to protect claim, and it is **DENIED** as to Plaintiff's Eighth Amendment excessive force claim and state law negligence claim.

**IT IS FURTHER ORDERED** that Plaintiff produce all of his evidence in opposition to summary judgment on his Fourteenth Amendment retaliation claim no later than fourteen days from the date of this Order. If Plaintiff files such evidence, Plaintiff must accompany it with a memorandum of points and authorities not to exceed ten pages. Defendants may file a response, if any, fourteen days later, not to exceed ten pages.

Baton Rouge, Louisiana, this 28th day of March, 2018.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**